Anna and George Khoury were granted permanent residence status by the immigration judge last month, so they are no longer petitioners in this matter. So their issue about asylum is moot then? No. Their issue for asylum is still pending because of their children, who also requested asylum. So that case is still pending. Basically, there are three forms of relief that they are seeking, asylum and withholding. Equitable estoppel is for Nancy Khoury, one of the petitioners, and repapering for the three of them. Regarding the asylum and the withholding, based on the immigration judge's decision, it was unclear whether he made a credibility determination based on the government's brief, it appears that they do not question the credibility. And therefore, since it would be determined that they were credible, whether they have established a well-founded fear of persecution. In this case, we believe that they have. They suffered death threats, they suffered beatings, attempted kidnapping, rock throwing. They were afraid for their lives, they fled their country. The immigration judge's decision, basically he just states that they didn't know who harmed them, where they were harmed, what dates and what actually happened when they actually did give specific detailed testimony regarding the threats that they suffered and the harm that they suffered. This court has held in Babalevi Ashcroft that threats of serious harm, particularly when combined with confrontation or other mistreatment, may constitute persecution. Well, let me ask you, what evidence is there in the record that would suggest that the Jordanian government was unable or unwilling to control these what appeared to be Muslim-dressed men who harassed the petitioners? Well, the State Department reports were submitted and the immigration judge, even in his own decision on page 84, states that there are these extremist groups that the government cannot control. When your clients were asked about whether they reported anything to the police or to government officials, wasn't the answer always no? Right. They always expressed that they were afraid to report this. However, they did corroborate their testimony, as I said, with a priest who went on to stand and explain that he is aware of the Christian problems and that these things do happen. But you still have to make some link to the government. I think the State Department report indicates that Christians and many other non-Muslims are guaranteed the right to worship openly under the Jordanian constitution. Correct. But when you have the extremist elements that the government is unable to control, it doesn't necessarily have to be the government that is doing the persecution. Here in this case, we have the Muslim Brotherhood, and it was clear from the record that the government was not able to control them. There are instances, and even the immigration judge in his decision states that there's no doubt that there's exceptions to this. If you state that everything is free, clear, and there's no problems, there are exceptions. And the immigration judge himself laid it out in his opinion that there are exceptions to this. So basically, they, you know, they stated their testimony was credible. They did. There are the few that were persecuted, and it's due to these extremist groups. So that's in regarding the asylum and the withholding. When we get to the equitable estoppel argument, that pertains to Nancy Curry. And basically, the argument there is two arguments. One, the government was at fault in denying her case in the first place because, as it's stated in the AAU decision, the judges clearly found that what they were asking for, it was impossible to submit. So the question then goes to, one, was the government at error, which would have been an equitable estoppel argument, or, two, an equitable tolling argument, whether Petitioner could reasonably have filed the motion to reopen, but she didn't have the vital information she needed bearing on her claim. And in this case, she didn't have the vital information because the AAU itself said that nobody could have had this information. They clearly found that it was an erroneous determination made by the government, and so they sustained her appeal. And if they would have done that, if they didn't ask for documents that they shouldn't have asked for, she could have filed within the correct timeframe, and she would have been eligible to adjust her status in the same fashion that her parents. Well, obviously, we know that they were successful, and the government's position, I guess, from what I ascertain is that she should have filed and then asked for a stay pending what would happen. But, you know, and I guess the question that I'm going to ask the government about this is, if she couldn't have succeeded at that point, do we really want people filing, you know, claims that aren't meritorious? Well, exactly. I mean, you know, because I'm always kind of happy when lawyers tell me, well, you know, the reason I didn't file something is because I had — I couldn't in good conscience file it because I couldn't have prevailed. But then, on the other hand, if we come back around and then say, well, you needed to file it and then ask to stay it, even though you knew it wasn't meritorious, it does kind of create a catch-22 here. Well, my experience with the BIA is that if you don't have an approved case, they do not — in order for them to remand it, they need an approved petition. Even in immigration court, when you have, for example, a marriage with a U.S. citizen and it's basically a matter of the government just approving the visa petition, a lot of immigration judges won't even wait for that. And they say, no, we're not going to do that. You don't have anything available today. You know, you're denied. So realistically, for the government to state that we have an option of filing with the AAU in the future, I mean, it just — practically and legally, the BIA does not do that. And that's based on, you know, experience and not — nothing written in the law. So that's regarding, you know, her case. If they didn't make this erroneous determination, number one, she would have been — I'm sorry? I think something was — I think you were bouncing back, maybe. I'm sorry. No, it's all right. And the third issue is the repapering issue, okay? And basically, case law is unclear regarding this issue, and I believe this panel is probably wondering, number one, how does this panel have jurisdiction to make a decision regarding the repapering? And there are two things, basically. The Real ID Act of 2005 stated that this Court needs to treat petitions of review filed under former Section 106A, which is pre-IRA-IRA. They have — pre-IRA-IRA made a distinction between exclusion and deportation. All these petitioners would have been eligible for suspension of deportation but for the change. Now, with the Real ID Act of 2005 asks this Court to treat this case as it was filed under IRA-IRA. Under IRA-IRA, they definitely would be eligible for cancellation today. So the question is, they're eligible for cancellation, but the immigration judge in the BIA never made a determination on cancellation because they didn't have that issue before them. But today, this Court has to determine that they are eligible for cancellation. And so that's one part of it. The second part is that this Court may state, and what the government is saying, is that there was — they would not have repapered it, the Board of Immigration Appeals would not have repapered it sua sponte because it wasn't a final administrative order. However, the regulations for repapering are not even out yet. All we have are just memoranda of what the Board of Immigration Appeals and what the immigration judges should do in this case. But the final regulations are not yet. So there aren't really any final regulations in this case. So it's not an administrative final decision, and therefore, this Court would still have jurisdiction. It would not prejudice the opposing party whatsoever. Because, ira ira, they are entitled to that form of relief. Now, in the briefs, is it just Nancy that requests a repapering, or do they all? No, they all request a repapering. But Nancy didn't — the government points out that she didn't raise this argument before, so she hasn't exhausted it. How do you respond to that? Well, that's why when we did the Ninth Circuit case, the motion, the Real ID Act wasn't out clear on the pre-ira ira as opposed to the ira. And basically, technically and legally, they are now eligible for the repapering based on the parents being granted their status. So it's new circumstances that have arisen in accordance with this as well. Okay. You want to reserve the balance of your time? Yes, I would like to reserve. Thank you. Thank you. Good morning, and may it please the Court. Jonathan Potter on behalf of the Attorney General. Petitioners in this case have not established past persecution in Jordan, and therefore their asylum claim must fail. First, the State Department reports are very clear that there is not a pattern in practice on the part of the government of Jordan of persecuting people that are of the Christian faith. Petitioners in this case never reported once any of these alleged instances of persecution. If you look at what actually ---- So we're assuming they were credible here. Is that correct? Yes, Your Honor. I'd like to address that real quickly. I think that the claim that there was an adverse credibility determination in this case, that's not what happened here. What the immigration judge said is he looked at the evidence and he said it goes to weight. I find some of their testimony a little questionable, but that goes to the weight, not to the fact whether they were credible or not. So, yes, we believe that the immigration judge in this case did not make an adverse credibility determination. He just said some of their testimony is a little sketchy, and therefore I give it less weight than I would if I thought it was totally believable. Looking at what happened to the Currys in this case, we have George Curry, who's claimed that on three occasions in June 1988, August 1988, and December 1988, he was in some way accosted by people because he was of Christian faith and espousing the Christian faith. On all three occasions he said that these people were wearing Islamic clothing. The first occasion he was told in June 1988 to stop his church activities. In August 1988, a man came up to him and said stop your church activities, and he was joined by another man. On a third occasion in December 1988, he claims that two men in Islamic clothing beat him with sticks, and that's the extent of what he claimed, the persecution he received, and he admits on all three occasions he did not report this to the Jordanian government. Then we have Renia Curry, who claims that she was harassed at college. She admits that she continued attending college and actually graduated from college, but that's the extent of her harassment. Then there's Nancy Curry, who claims that people were throwing rocks at the windows. Once again, these were Muslim men because they looked like Muslim men because they were wearing the dress of Muslim men. That's the extent of the persecution in this case. That just simply does not rise to the level of persecution. That's at most harassment. Counsel? Yes, Your Honor. I know this is not exactly before the court, but do you have any information about current conditions in Jordan in respect to how the Christians are faring? Your Honor, I looked at the most recent State Department report before I came out here, and it's very similar to the one that's in the record right now. So it's not dissimilar to that. Things have not degraded over there as far as the treatment of Christians, according to the State Department. I've wondered about the current riots everywhere in respect to the cartoons, whether that is really making a dangerous situation for non-Muslims. Your Honor, I don't have any information about that. Of course, that's not in the State Department reports. No. That is so recent, I don't know what impact that would have on any of this right now. We've not heard any noise about that as far as Christians are concerned. We've just heard it's really destabilizing some of the governments as far as that goes. Well, obviously that – explain to me why you want more than one – why the petitioners want more than one arrow in their quiver from this standpoint. They have permanent legal LPR status right now, right? But they also want asylum. They want to succeed on their asylum. And what advantage would they have to having both of those? I'm not quite sure what advantage they'd have to have both of them. Of course, if somehow through the LPR process they lose that status, they would still be able to fall back on their asylum status. So I can understand maybe it's always better to have more than less, and I think that's exactly what they're looking for. Well, now, moving on from the asylum charge, the two areas that I'm interested in discussing with you are with Nancy, because she got her visa denied, and so she went through the process of appealing that, and eventually I guess she got it. And your position, as I understand it, is she should have filed during the time period and asked for a stay. Well, what if she really – if there was no merit? The only merit would be if you have a visa. Do we want to encourage people to file meritless claims? Your Honor, we want to encourage people to file stays when they have issues pending before DHS. Yes. Do we want people to file motions to reopen that are meritless? No. But we do want – Well, what would have been the merit of her filing it if – Simply put, she has an application that she believes is meritorious, and that's an application that would put her case on hold and let the agency make its decision. But to sit on her hands and not do anything – Well, I mean, can you really – okay, she didn't do that, and that's your preferred course, and I understand why you don't want to, you know, encourage people to do otherwise. But was she really not diligent in pursuing getting her visa? I mean, can we show other lack of diligence on her part? No, I don't think that's the case, Your Honor. I think it's the cases that we want to, more than ever, start channeling people into practicing law and exercising their rights in the right way. Tightening up the whole immigration process is very important to the government as well as to petitioners, and that's one of the things we need to do in tightening up the process is making people practice law, not sit on their hands, not sit on their rights, and do the things that they have to do to protect their rights. And this is just one of the things that should have been done is file a motion for a stay, say I have an issue pending before DHS, before, you know, the service, and we need to have that resolved before we move forward. And that's an important thing. Counsel. Yes, Your Honor. Counsel, could she be granted a motion to stay without filing a motion to reopen? Yes, Your Honor. She could receive a motion to stay without filing a motion to reopen. She has to say, I have something before the service that I think is meritorious. In fact, we're doing that more and more even before this Court and other courts across the country is let's let the process work itself out. Let's try to rein back on the cases that, as this Court well knows, hits the Court, and let's try to work things through the administrative process and not deluge all of us with all these cases that we don't need to face. What she would be saying would be my motion to get an adjustment has been denied, and I'm appealing that. Would that have been a good basis for a motion to stay? Would that have been granted? Well, Your Honor, I can't speak for the Board, but I can only say if I had been on the Board I would have granted that motion if she put forward the facts of why she thought she should receive that. Now, she couldn't really, I think, in good conscience do a motion to reopen, and that probably would have been denied, and you're not allowed a second motion to reopen. So it seems to me that the moment that she had a firm basis for claiming a motion to reopen, she filed it, did everything that she should, except you're saying that she had to go for a motion to stay. Well, yes, Your Honor, and that's, once again, that goes back to my earlier point about trying to tighten up the process and trying to, I can understand why the Board in this case was frustrated by a very late motion to reopen, and I can understand that they want to tighten, they're attempting once again to tighten up the process and to make people practice law and to not let people not sit on their rights and to really get things together. I can understand that, and that's why I think it's very defensible for them to deny the motion to reopen. Of course. Well, and I guess, but, you know, from our perspective, you can't put people in a trick bag either. You know, if you're darned if you do and darned if you don't. Well, we don't know if she was darned if she didn't because she didn't file a motion to stay in this case, Your Honor. But if she had done that and she was denied that, then when she got her visa, where would she be? If she had done that and been denied that motion to stay, I would not be standing in front of you right now, Your Honor. Well, you might not be, but someone else might be. No, I don't think. That's always a, you know, that's. Well, I don't think, you know, in those circumstances, I think we would say, you know, we'd be in mediation instead of in front of you right now. Okay. Talk to me about the repapering. Your Honor, that's simply, they felt exhaust. That's a simple matter. That's an issue. All of them? All of them. The board could have addressed that issue. An immigration judge could have addressed that issue. They felt exhaust at issue, and this Court has no jurisdiction over that issue. Could we send it back to have consideration for repapering? Clearly, this area is pretty mixed up in that there aren't any final regulations and nobody's been quite sure what they should do and how they should do it. Would this be an appropriate thing to send it back for the BIA to consider whether there should be repapering? No, Your Honor, because, once again, this is an instance where the petitioners did not raise the issue, so this Court doesn't have jurisdiction to send it back on that issue. I mean, this Court's been very clear on jurisdiction, and as far as jurisdictionally, if it's not raised at the lower levels and the administrative agency is not given the opportunity to address issues, this Court's been very clear that we're not going to allow things to be raised for the first time in front of this Court. If there are no further questions, we ask that this petition be dismissed. Thank you very much. Thank you for your argument. Okay, I just want to rebut a few issues that were raised. First of all, this Court has held in Molina-Estrada that a State department report on country conditions is not sufficient to rebut a presumption of persecution. So the mere fact that the State department report is not sufficient to rebut a presumption of persecution. Well, I never got the presumption, but the fact that they are stating that the State department report, they are giving it less weight, I believe, would help in this circumstance. And the other issue is the fact that they never went and complained. And clearly, George Curry, in his testimony, made clear that he was so afraid of what the Islamic fanatics would do to his family if he went and complained. And these people, I mean, if you're fearing persecution and you know that you have Islamic fanatics and if he goes and he tells the government and the government will go and they said to him, if you go and tell anybody we're going to kill your family, then obviously he has a right to not go and tell his family. And the fact that the government is minimizing the persecution when there were clearly death threats, there were beatings, attempted kidnapping, rock throwing. They had to put iron doors on, you know, in their home, and they flood the country. I believe that amounts more to just harassment. This isn't just a situation where if they let everything go, nothing would have happened. I mean, I don't know if the government expected them to die or anything, but they were. Well, you know, there's some factual scenarios that you could both give your best argument, and either way that the court would go, either of you would win, depending on how the fact finder resolved those. Correct. You know, and he's made some arguments and you've made some, and, you know, it would probably be if the I.J., either way the I.J. went, I could see myself in the same position under these facts to some extent. Correct. And the other issue I just wanted, the asylum, for it to be granted, is basically not for the parents at this point. It's more for the petitioners, because the parents would go through, they've already received their green card. So the fact that a determination, if it would be a positive determination in this case. Regarding the argument that a petitioner could have filed to stay with the Board of Immigration Appeals, most immigration petitioners have another form of relief pending for them while their cases are pending. Either they have a relative who's petitioned for them, for example, a brother or sister, who the, in order to get their immigration status, it would take 20 years. If every petitioner could file with the Board of Immigration Appeals, that they have a sister's petition pending, they have a mother who would take five years, they have the court would be inundated with stays, and it just, it's something that's not practical when it comes to immigration, because almost every single immigration, a person who's going through immigration is also seeking an alternative form of relief, either it be a labor certification or it be something else. And the Board does not stay, and they do not get to say, we either have an approved petition. The immigration judges, as I previously noted, they don't, they, they are not willing to stay anything. You either have the relief or we move on to the next step. And I think if this Court makes a ruling that she should have filed to stay, the Board of Immigration Petitioners' filing stays, because almost everybody has an alternative form of relief that they're just waiting for that to come about. And regarding the repapering, my final argument. Now, that one's, that one's a little more problematic. I mean, for bringing, bringing up things for the first time in front of this Court, those are, in my view, pretty standard rules of appellate advocacy. But when things come up after the briefing happens, after the Board of Immigration briefing happens, the Real ID Act, when, when this Court has jurisdiction, when there's no injustice to the other party, then, then this Court can make that determination. Do you have any further comments? Nothing further. Thank you both for your arguments. This matter, these matters will stand submitted. Thank you. This Court stands in recess until tomorrow at 9 a.m. Thank you.
judges: Goodwin, B. Fletcher, Callahan